1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

        *Plaintiff*,                **CASE NOS. 12-CR-165,**
                                       **12-CR-262, 12-CR-263**
VS.                            **AND 12-CR-280**

                                       **MARCH 7, 2013**
                                       **10:48 A.M. - 11:26 A.M.**

JOSHUA MICHAEL BECKSTEAD,

                                     **CASPER, WYOMING**

        *Defendant*.

---

**TRANSCRIPT OF HEARING ON SENTENCING**
**BEFORE THE HONORABLE SCOTT W. SKAVDAHL**
**UNITED STATES DISTRICT JUDGE**

---

**APPEARANCES:**

For the Government:       **Stephanie Sprecher**
                            UNITED STATES ATTORNEY'S OFFICE
                            P.O. Box 22211
                            Casper, Wyoming 82602

For the Defendant:        **James H. Barrett**
                            FEDERAL PUBLIC DEFENDER'S OFFICE
                            214 West Lincolnway, Suite 31-A
                            Cheyenne, Wyoming 82001

Reported By:               Jamie L. Hendrich, CSR-RPR-CRR
                            OFFICIAL FEDERAL COURT REPORTER
                            U.S. District Courthouse
                            111 South Wolcott, Room 217
                            Casper, Wyoming 82601

1       **(The proceedings commence at 10:48 a.m.)**

2       **THE COURT:**  All right.  Court is in session in the

3 matter of the United States of America versus Joshua Michael

4 Beckstead, Case Numbers 12-CR-165, 262, 263 and 280.  I note

5 the presence of Mr. Beckstead and his counsel, Mr. Barrett, and

6 counsel for the United States, Ms. Sprecher.

7       The matter comes before the Court for purposes of a

8 sentencing; and before we begin that process, are there any

9 preliminary matters or issues that we need to address?

10      Ms. Sprecher?

11      **MS. SPRECHER:**  No, Your Honor.  Thank you.

12      **THE COURT:**  Mr. Barrett?

13      **MR. BARRETT:**  No, Your Honor.

14      **THE COURT:**  All right.  I would advise the parties

15 that the Court does not attend -- intend to deviate from the

16 advisory sentencing guideline ranges in this matter.  There was

17 an issue that was addressed in an objection; but just so that

18 we focus on what needs to be, I would advise you of that at

19 this time.

20      Let us then -- Mr. Barrett, if you and your client

21 would come forward to the podium.  And let me verify,

22 Mr. Barrett, that you've timely received a copy of the

23 presentence report in this matter?

24      **MR. BARRETT:**  We did, Your Honor.

25      **THE COURT:**  And you've had an opportunity to review it

1 with the defendant, Mr. Beckstead?

2      **MR. BARRETT:**  Yes, Your Honor.  It was provided to

3 Mr. Beckstead and he read it.  I don't know if -- I don't think

4 we reviewed it -- reviewed it in person but we did over the

5 telephone.

6      **THE COURT:**  All right.  And let me verify with you,

7 Mr. Beckstead, first, you're not currently under the influence

8 of any alcohol or controlled substance?

9      **THE DEFENDANT:**  No, sir.

10      **THE COURT:**  You're not currently suffering from any

11 mental or physical condition that might prevent you from

12 understanding?

13      **THE DEFENDANT:**  No, sir.

14      **THE COURT:**  And you're not currently under the care of

15 a physician or any prescription medication?

16      **THE DEFENDANT:**  Just insulin.

17      **THE COURT:**  Just -- for your diabetes?

18      **THE DEFENDANT:**  I'm diabetic, yeah.

19      **THE COURT:**  All right.  And everything is okay in

20 terms of your -- your condition today?

21      **THE DEFENDANT:**  Yeah.  Yes, sir.

22      **THE COURT:**  All right.  You had a sufficient

23 opportunity to review your presentence report?

24      **THE DEFENDANT:**  Yes, sir.

25      **THE COURT:**  And you've had an opportunity to discuss

4

1 that presentence report with your attorney, Mr. Barrett?

2          **THE DEFENDANT:**  Yes.

3          **THE COURT:**  And he's been able to answer all of your

4 questions?

5          **THE DEFENDANT:**  Yes.

6          **THE COURT:**  And you're satisfied with his

7 representation?

8          **THE DEFENDANT:**  Yes.

9          **THE COURT:**  I would note, for purposes of the record,

10 that there's been no information withheld from the report; and

11 I would direct that the presentence report be placed in the

12 file under seal and, if an appeal is taken, access be permitted

13 to the sealed presentence report.

14          I would also note that, in terms of objections, there

15 was an objection filed by the defendant as to any potential for

16 upward departure for lack of adequate accounting of criminal

17 history.  Are you okay?

18          **THE DEFENDANT:**  Yeah.  I'm just -- sorry.  My arms are

19 just real uncomfortable.  I'm kind -- I've gained a lot of

20 weight.

21          **THE COURT:**  Okay.

22          **THE DEFENDANT:**  So I apologize.

23          **THE COURT:**  That's all right.  If -- is it too tight?

24          **THE DEFENDANT:**  I'm just -- I feel just kind of

25 cramped.  I'm okay.  I'm just a little nervous.

1          **THE COURT:**  All right.

2          **THE DEFENDANT:**  I apologize.

3          **THE COURT:**  If you need something adjusted, let us

4 know.  Okay?

5          **THE DEFENDANT:**  Okay.

6          **THE COURT:**  But with respect to the plea agreement in

7 this matter, the plea had been made to each of these cases as

8 indicated for bank robbery; and pursuant to the terms of that,

9 I believe there was an agreement to dismiss certain -- Three?

10          **MS. SPRECHER:**  Count Three, Your Honor.

11          **THE COURT:**  -- Count Three of the charge in the

12 indictment in Case Number 12-CR-165.

13          All right.  There's not a binding plea agreement in

14 this matter.  With respect to any other objections, factual or

15 legal statements that you believe need to be placed on the

16 record, Mr. Barrett?

17          **MR. BARRETT:**  No, Your Honor.  Given the -- the

18 Court's comment -- comments when you came to the -- comments

19 when you came to the bench and -- and my review of the

20 presentence report in other respects, we have no objection to

21 calculation of offense level or criminal history category.

22          **THE COURT:**  And let me also verify, Mr. Barrett, that

23 you have had the opportunity to review the calculation of

24 restitution in this matter?

25          **MR. BARRETT:**  Yes, Your Honor, I have; and -- and it's

1 largely confirmed by Mr. Beckstead.

2        **THE COURT:**  All right.  Any objections, additions,

3 corrections or amendments that the United States believes are

4 necessary to the presentence report?

5        **MS. SPRECHER:**  No, Your Honor.  Thank you.

6        **THE COURT:**  All right.  It does not appear that the

7 Court is required to rule on any factual or legal issues

8 regarding the conclusions in the presentence report with

9 respect to the advisory sentencing guideline.

10        Based upon the presentence report in this matter, the

11 defendant's total offense level for the offense is a 23.  He

12 has a criminal history category level VI which results in a

13 sentence advisory guideline sentence of 92 to 115 months,

14 supervised release period of one to three years.  He is

15 ineligible for probation.  A fine range would be 10,000 to

16 100,000.

17        There is a mandatory restitution requirement; and as

18 noted by the Court, that restitution -- well, it wasn't noted

19 but the restitution total that has been calculated and provided

20 to counsel is $14,033 to the various institutions that were

21 subject to Mr. Beckstead's visits for withdrawal, and then

22 there was a special assessment of $100 per count.

23        As to the guideline range application and those items,

24 Mr. Barrett, do you agree that is the appropriate guideline

25 provisions?

1          **MR. BARRETT:**  I do, Your Honor.

2          **THE COURT:**  And, Ms. Sprecher, does the United States

3 so agree?

4          **MS. SPRECHER:**  I do, Your Honor.

5          **THE COURT:**  All right.  I would then hear from counsel

6 as to recommendations on sentencing.  I would first hear from

7 the United States, and then I would hear from the defense.

8          Ms. Sprecher.

9          **MS. SPRECHER:**  Thank you, Your Honor.

10          Your Honor, I've had an opportunity to speak to

11 Mr. Healy.  I've also read the presentence report and come up

12 to speed on this case and Mr. Beckstead.  I think it's worth

13 noting, as Mr. Olive noted, that it doesn't appear that any

14 sort of punishment imposed so far on Mr. Beckstead has had any

15 effect on rehabilitating him or deterring behavior; and for

16 that reason, we would ask that the Court sentence within the

17 guidelines that you've recommended but consider that when --

18 when implementing a sentence or imposing a sentence on

19 Mr. Beckstead.

20          Even -- I mean, even if you consider the circumstances

21 surrounding this particular -- or the particular beginning of

22 this -- of all of these -- this crime spree that he went on, he

23 was furloughed from jail at the time, and it just doesn't

24 indicate or doesn't -- it isn't promising that any amount of

25 time would be a sufficient amount of time to rehabilitate him.

1         If you look at the prior criminal history and his

2    deplorable behavior while on probation and parole, his behavior

3    in starting these offenses and just as you read through it, you

4    see that he has started out with maybe lying, maybe

5    manipulating, where it went from those types of behaviors to

6    paper crimes, and now he's graduated to bank robberies although

7    not violent, but it -- he certainly stepped it up a little bit

8    in comparison to writing hot checks which he had been doing

9    continuously for several years.

10         So I just ask the Court to consider that and consider

11    the effects that it has on the individuals as is indicated in

12    the presentence report and ask that the Court sentence as you

13    deem appropriate.

14         **THE COURT:**  All right.  Thank you.

15         Mr. Barrett.

16         **MR. BARRETT:**  Thank you, Your Honor.

17         It's clear that Ms. Sprecher has had some superficial

18    conduct with Mr. Healy and focuses almost entirely on the

19    negative in the presentence report as opposed to the fact that

20    Mr. Beckstead, in this case, has not only attempted but has, in

21    fact, cooperated to a degree that brings credit to him and,

22    frankly, belies the -- the idea that, "Well, gee, he's going to

23    continue to commit crimes."

24         In fact, nearly from the beginning, he has indicated

25    to me -- and I'm sure will express to the Court -- that his

1 life as a convicted offender has -- in prison and otherwise,

2 has been anything but successful and anything but fulfilling.

3 He now has family that he wants to make an effort to get back

4 to.  He has had gainful employment, successful employment.  He

5 lost that which is what began the most recent spree and -- that

6 brings him before this Court.  In fact, there are a number of

7 offenses here from Montana, Utah, Wyoming and even an offense

8 in Colorado that is not included in the Rule 20 because

9 although Colorado is going to close the case, they have no

10 interest in prosecuting, given the circumstances here.

11       These are all matters brought to the attention of the

12 United States and all of which were voluntarily offered to the

13 United States in an effort to put everything in one basket, to

14 conclude and dispose of all these offenses at one time and,

15 frankly, to save the time and the effort and the travel and the

16 unnecessary foolishness that would be involved in traveling

17 from jurisdiction to jurisdiction and causing the United States

18 no end of expense and difficulty.

19       Now, does that mean he's one of nature's noblemen who

20 is simply out there trying to return money to the

21 United States?  Probably not but it certainly is evidence of

22 his state of mind at this point; it's evidence of his state of

23 mind now; and to simply ignore that, given the fact that the

24 United States itself, in the plea agreement, indicates that

25 he's eligible for consideration for substantial assistance, the

1 United States doesn't take that lightly; and I assume when they

2 say it and when Mr. Beckstead cooperated, volunteered to

3 cooperate and called them -- they didn't call him.  He called

4 them and said, "Look, I'll talk to you about all of these.

5 Let's get it taken care of, and I'll -- I'll tell you about one

6 that you're aware of but you don't know who was involved."  He

7 discussed other individuals that were suspected, and some he

8 cleared and others he did not.  I don't know that those will

9 result in prosecutions in Wyoming but may in other

10 jurisdictions.  All of those things were recognized by the

11 United States as -- as worthy of consideration certainly

12 during -- as a 5K, and I think that speaks for his turnaround.

13          So Mr. Beckstead has a colorful history, but his

14 history isn't violent.  You know, it's unusual in the sense

15 that he ran out of money because of the last job and couldn't

16 find any work and decided to re- -- to revert.  That's true.

17 Went on -- on these bank robberies that -- that were anything

18 but terrifying.  I mean, his note is:  "Give me your money,

19 question mark."  It's not "I have a gun, your life is in

20 danger, give me everything," and -- and runs in high-speed

21 chases or even pretends to possess a firearm or any other

22 device.

23          He's -- his conduct during these robberies is

24 borderline larceny except for the fact that one or more of

25 these tellers may have felt intimidated, worried or frightened

1 at the time.  There's no overt effort by him in any respect to,

2 in fact, intimidate or threaten anyone here.  That they're

3 trained to hand over money is a -- frankly, a robber's dream,

4 but he shouldn't have done it, and he'll tell you he shouldn't

5 have done it; they were obviously wrong decisions.

6        But certainly within the context of these convictions

7 and within the context of his cooperation, within the context

8 of his cooperation in exploring and revealing all he can to

9 probation, he's evidencing not a resistance to change but

10 actually his willingness to change.  Can we guarantee -- none

11 of us can guarantee that he will; only he can.  I'm convinced

12 that he's going to make an honest effort to do so, and -- and I

13 hope he's successful in that regard.  But he's not one of the

14 most evil or dangerous people we've ever seen.  Quite the

15 opposite.  As he stands here today and as I spoke to him

16 earlier, he's extremely nervous.  He's just not one of your

17 big-time bank robbers.

18        His forgeries, such as they were, are non-violent and

19 isolated in this instance.  He doesn't threaten anyone.

20 There's -- there are thefts.  Are those good things to do?  No.

21 Are they the worst things he could have -- are -- are they as

22 bad as he might have done or that we've seen done?  No.  So to

23 try and place him in a category that seems to put him in the

24 high end of offenders simply isn't supported by the facts

25 except in the most general -- general way.

1          And so I -- I encourage Your Honor to enter a sentence

2   at the low end of this guideline, if not below, taking into

3   consideration all of those factors that I've mentioned; and

4   I -- I've -- I have a hard time considering Mr. Beckstead --

5   and I've had a lot of contact with folks -- to be one of the

6   most dangerous critters I've ever run into.  It's just not the

7   case.  Should he be incarcerated?  Absolutely.  Is he going to

8   be?  Absolutely.  Does he need to be maximized?  Absolutely

9   not.

10          And I do believe -- he'll speak to you, Your Honor,

11   but I do believe he has the potential -- he's a guy with some

12   talent.  If he can find a job, he tends to stick with it until

13   he's let go.  If he can't find them again, that's where the

14   danger -- and I speak of danger -- when I say "danger," that's

15   where the risk for him lies; that he makes poor judgments in an

16   effort to obtain income or monies.

17          The changes -- the statement has been made that he

18   just doesn't seem to get it, you know; no -- no matter how long

19   he commits these offenses, non-violent as they are, that he

20   keeps committing them.  Well, if there's anything difficult to

21   predict, it's -- it's the future and particularly future

22   behavior, but I can tell you that Mr. Beckstead is very tired

23   of being in prison, very tired of being stupid and wants to get

24   what's left of the rest of his life squared away.

25          Thank you, Your Honor.

1          **THE COURT:**  Thank you, Mr. Barrett.

2          Mr. Beckstead, you're entitled to speak in allocution

3 of any sentence, and I would hear from you at this time.

4          **THE DEFENDANT:**  Well, I really don't know what to say,

5 Your Honor, to be honest with you.  I'm not a bad guy.  I do

6 seem to always wind up taking that route, you know.  I --

7 during all this right here, I really -- somehow my brain was

8 able to convince myself I wasn't doing nothing wrong 'cause I

9 was just out fishing; and, you know, I -- I never realized that

10 I affected anybody at all until I read my presentence report.

11 I always thought that, you know, these people's job -- it's

12 their job.  They're trained to do that, you know, just give you

13 the money; and I read in my PSI the one lady's comment, you

14 know, that it really messed with her, and that was never my

15 intention.  I'll tell you that much right now.  I -- I'm about

16 the least violent fellow you ever met in your life, you know.

17 I don't -- I wasn't never trying to put anybody -- make them

18 feel that way.

19          So that's pretty much all I got to say.  I just -- I

20 got a family.  I already got little kids.  I got two daughters.

21 I got a dad that's almost 70 years old, 63 years old anyways.

22 You know, that's pretty much all I got.  I -- my mind's a

23 little bit out of it right now.  So . . .

24          **MR. BARRETT:**  Your Honor, one matter I might also

25 mention is that Mr. Beckstead has $14,000 in restitution ahead

1 of him, and so I believe it should also be a measure of the --

2 of his term of imprisonment that, frankly, ideally, he'd be

3 able to go out today, find a job and begin restoring these

4 victims to -- to their earlier condition, and that's not going

5 to happen, and we don't expect it to happen.  But increasing a

6 sentence simply for the sake of increasing it also delays

7 restitution and, frankly, increases -- well, when Mr. Beckstead

8 is released, being a convicted felon is difficult enough to

9 find work.  If you're released and you're age 50 or pushing 60

10 or whatever that might be, it's even more difficult.  You have

11 age combined with status combined with the delay in restitution

12 although I'm sure all of these were insured.  Yet he

13 nevertheless has an obligation that he needs to get busy on as

14 early as possible.  So I think that's a legitimate

15 consideration in imposing a sentence at this -- in this case at

16 or at just below the low end of this range.  Thank you.

17          **THE COURT:**  Thank you, Mr. Barrett.

18          Anything else you wish to add, Mr. Beckstead?

19          **THE DEFENDANT:**  No -- well, I did go to -- graduated

20 from some college courses, auto mechanics; and just prior to

21 all this, you know, I had a great job.  I was making 23.74 an

22 hour working for Midas International.  That's in my PSI also.

23 I just wanted that to be verified, you know.  My boss even said

24 in there that I was a pretty good employee.  I -- says I had

25 some attendance issues and that's 'cause I had a puppy at home.

1  I had to take off every day, go let my puppy out, and I lived

2  just outside of town.  So it took me a little while to get

3  there and back, you know, but my attend- -- my employment --

4  I've al- -- I've been gainfully employed every time I -- if I'm

5  on the streets, I'm gainfully employed always.  I have always

6  been.  It just seems like I fall into them -- hanging out with

7  the wrong people or the wrong people are hanging out with me,

8  one or the other, and I wind up, you know, in trouble somehow,

9  some way; and like I said, my mind is a little addled right

10  now.  I apologize.

11          THE COURT:  Well, Mr. Beckstead, I -- I have no

12  question that you're a gentleman criminal.

13          THE DEFENDANT:  Thank you, Your Honor.

14          THE COURT:  I mean, the state trooper in Utah said,

15  "Well, I won't have you arrested so long as you just have a

16  personal use amount."  Obviously he knew you on-site.  Various

17  law enforcement individuals in the presentence report were

18  familiar with you.  Everybody -- everybody agrees you're a nice

19  guy.

20          THE DEFENDANT:  Just a criminal.

21          THE COURT:  You're a nice crook.  The -- the Midas

22  job -- I suspect, in addition to the puppy, there was probably

23  some "substance abuse" issues that might have --

24          THE DEFENDANT:  Lots.

25          THE COURT:  -- caused the problems.

1        **THE DEFENDANT:**  Yeah, lots.

2        **THE COURT:**  Lots of methamphetamine, lots of

3 marijuana.  Alcohol was also there a little bit, you know.

4        **THE DEFENDANT:**  I've been a drug addict since I was

5 13.  I didn't mean to interrupt you.  I apologize.

6        **THE COURT:**  Well, it's obviously and painfully clear.

7 And your fishing -- I don't know what impact it has, but when

8 you're four years old, your dad was supposed to take you

9 fishing, and he didn't show up, and so your mom let you fish in

10 the gutter.  I think there was a picture taken of it, and you

11 were on the front page of the paper, fishing in the gutter.

12        **THE DEFENDANT:**  Yes, sir.

13        **THE COURT:**  I suspect fishing is your happy spot.

14 That's -- you just -- you're able to forget everything and --

15 and not be paying attention to things.  But, Mr. Beckstead,

16 looking at your background, since you've been a juvenile, 13,

17 you started "substance abuse" issues.  You've got Nissa who's

18 eight years old, doesn't even live with her mom 'cause her mom

19 is in prison.  You've got Riley who's five and lives with her

20 maternal grandmother.  You want to be a father.  You're, I

21 think, if I recall, $12,000 in arrears on child support.

22        **THE DEFENDANT:**  How I don't know, but, yes.

23        **THE COURT:**  Well, the bottom line is -- is,

24 Mr. Beckstead, you had the opportunity -- people have given you

25 the opportunity, and you have flushed it down the drain.

1 You -- you know exactly how to minimize your -- your situation.

2 When you're caught, you give up the goods.  You're even a very

3 efficient bank robber to the extent that you don't get any

4 enhancements because you have a note that doesn't say "I have a

5 firearm or a weapon."  You know that they'll give up the money

6 as long as you say "give me the money," but the reason they

7 give you the money is 'cause they don't know whether you do or

8 don't.

9          **THE DEFENDANT:**  Yeah.

10          **THE COURT:**  As this poor lady from -- from Montana

11 noted, "Before the robbery, someone reaching into their pocket

12 was just grabbing a check or cash.  Now, it could be a stupid

13 note telling me to empty my drawer, a note, a note that makes

14 me so angry that he bullied me with a note, and he got my money

15 from a note.  I didn't know if he had a weapon, but I sure the

16 hell wasn't going to find out.  It's weird but I really felt

17 bullied, like I was just a nothing standing in front of me.

18 How could he just come in and take something that wasn't his?"

19          And I'm sure you were kind about it, but the bottom

20 line is that you took what wasn't yours; and you have, for

21 various reasons, substance abuse and otherwise, throughout your

22 life since 13 -- have taken wasn't -- what wasn't yours through

23 use of checks or other fraud, trucks, you name it, and you're

24 nice about it but you just do it.  And I -- I have to --

25 looking at this in terms of where I fall on the sentencing --

1 advisory sentencing guideline range -- and it is advisory and I

2 acknowledge that -- but in terms of looking at this, I -- I

3 don't see a low-end guideline sentence.  I don't think that

4 that accurately reflects -- and I think the United States'

5 assertion is -- is valid in the sense that Mr. Beckstead has

6 continued to choose the path of least resistance in criminal

7 conduct.

8         Do I think that he's not capable of making good

9 choices?  No.  I think he is if he's not on methamphetamine and

10 if he understands that, you know, there's jail and there's the

11 right thing; and if he wants to quit choosing jail and do the

12 right thing, then maybe he can be a father to his five- and

13 eight-year-old girls who, heaven forbid, probably have meth

14 addicts for moms, too.

15         In the end, looking at this matter, the Court --

16 pursuant to the Sentencing Reform Act of 1984 and considering

17 those factors enumerated under Title 18, United States Code,

18 Section 3553(a), it is the judgment and sentence of this Court

19 that the defendant, Joshua Michael Beckstead, is hereby

20 sentenced to a term of 112 months on each count to be served

21 concurrently on Counts One and Two of 12-CR-00165-01S,

22 Count One of 12-CR-00262-01S, Count One of 12-CR-00263-01S and

23 Count One of 12-CR-00280-01S, in the custody of the Bureau of

24 Prisons.  I believe that the acceptance -- he certainly has

25 accepted responsibility, and I believe he's received

1 three-level -- well, he has -- I don't "believe."  He has

2 received the "acceptance of responsibility" credit.

3          His -- I don't max him out under the guidelines at the

4 top of the range because I don't think that the particular

5 crimes were extremely aggravating; but his history, along

6 with -- with his prior conduct and considering all facts and

7 circumstances, I believe merit the 112-month sentence in the

8 range.

9          Upon release from imprisonment, Mr. Beckstead shall be

10 placed on supervised release for a term of three years on each

11 count to be served concurrently.  Within 72 hours of his

12 release from the custody of the Bureau of Prisons, he shall

13 report in person to the probation office in the district to

14 which he is released.  While on supervised release,

15 Mr. Beckstead shall comply with the mandatory and standard

16 conditions adopted by this Court and shall comply with the

17 following special conditions:

18          One:  He shall participate in and successfully

19 complete substance abuse treatment in a program approved by the

20 U.S. Probation Officer and abide by the rules, requirements and

21 conditions of the treatment program.  Mr. Beckstead shall not

22 discontinue that treatment without the prior permission of his

23 probation officer.

24          Number 2:  Mr. Beckstead shall submit to drug and

25 alcohol testing as directed by the U.S. Probation Officer and

1 shall comply with specific co-pays imposed pursuant to district

2 policy for failing to comply with drug testing.

3        Number 3:  As a component of Mr. Beckstead's treatment

4 and testing program, he shall pay a one-time fee of $250 to

5 partially defray the cost of treatment -- excuse me -- and/or

6 drug testing.  Monetary payments made by the defendant shall be

7 applied to this fee only after all other court-ordered monetary

8 obligations have been fulfilled.  Payment of the fees shall be

9 made, by money order or cashier's check, to the Clerk of

10 District Court, 2120 Capitol Avenue in Cheyenne, Wyoming.  This

11 condition is waived if he is supervised by any district other

12 than Wyoming.

13        Number 4:  Mr. Beckstead shall refrain from any use or

14 possession of alcohol and/or other intoxicants, including

15 over-the-counter medications used contrary to the recommended

16 dosage or the intentional inhalation of any substance,

17 prescribed or otherwise, without the permission of the

18 probation officer.  Additionally, Mr. Beckstead shall not enter

19 establishments whose primary income is derived from the sale of

20 alcohol.

21        Number 5:  Mr. Beckstead shall submit his person,

22 residence, storage facility, office, vehicle -- or vehicle to a

23 search conducted by a U.S. Probation Officer at a reasonable

24 time and in a reasonable manner upon reasonable suspicion of

25 contraband or evidence of a violation of a condition.  Failure

1 to submit to a search may be grounds for revocation.

2 Mr. Beckstead shall warn any other residents that the premises

3 may be subject to searches pursuant to this condition.

4          Six:  Mr. Beckstead shall participate in a cognitive

5 behavioral treatment regimen that may include but is not

6 limited to moral recognition therapy, cognitive thinking,

7 thinking for a change or interactive journaling.  Mr. Beckstead

8 shall actively participate in treatment until successfully

9 discharged or until the U.S. Probation Officer has excused

10 Mr. Beckstead from the treatment regimen.

11          Number 7:  Mr. Beckstead shall resolve any outstanding

12 warrants within six months of his release from custody.

13          The Court finds that restitution is mandatory in this

14 matter and orders total restitution in the amount of $14,033,

15 including $6,186 for Docket Number 12-CR-165 which -- well, let

16 me break it out this way.  Restitution shall be paid to the

17 following individuals in the cases cited in this matter:

18          Wasatch -- Wasatch Peaks Credit Union in the amount of

19 $991; payments should be made to the attention of the manager,

20 P.O. Box 68, Ogden, Utah, 84402; restitution in the amount of

21 $3,789 shall be paid to First American Bank of Purcell,

22 Oklahoma, to the attention of the manager, P.O. Box 1560,

23 Purcell, Oklahoma, 73080; restitution in the amount of $2,836

24 should be paid to American National Bank of Cheyenne, Wyoming,

25 to the attention of the manager, 6020 Yellowstone Road,

1 Cheyenne, Wyoming, 82009; restitution in the amount of $3,350

2 should be paid to First Bank of Wyoming, attention of the

3 manager, P.O. Box 907, Powell, Wyoming, 82435; and restitution

4 in the amount of $3,067 shall be paid to Atlanta Federal Credit

5 Union; Billings, Montana, to the attention of Rhonda

6 Diefenderfer, D-I-E-F-E-N-D-E-R-F-E-R, 3212 Central Avenue;

7 Billings, Montana, 59102.

8          The case number for the 999 -- for the 991-dollar

9 matter is 12-CR-262.  The case number for the $3,789-dollar is

10 Case 12 -- I'm sorry -- 12-CR-280.  And I goofed up on the 991.

11 That should be 12-CR-00263.  And the case number for the 3,067

12 is 12-CR-00262; and the case number for the remaining amounts,

13 which are the two Wyoming banks, American National Bank of

14 Cheyenne and First Bank of Wyoming, is a total amount of

15 $6,186.

16          It is further ordered that defendant does not have the

17 ability to pay a fine in addition to the restitution, and

18 therefore no fine is imposed.  It is ordered that Mr. Beckstead

19 shall pay a special assessment fee in the amount of $100 per

20 count for a total of $500 which shall be due immediately.

21 Payments for monetary obligations shall be made payable, by

22 cashier's check or money order, to the Clerk of the U.S.

23 District Court, 2120 Capitol Avenue, Room 2131, Cheyenne,

24 Wyoming, 82001.  Mr. Beckstead shall participate in the Inmate

25 Financial Responsibility Program to pay his monetary

1 obligations.  Mr. Beckstead shall pay all financial obligations

2 immediately.  Any amounts not paid immediately or through the

3 Inmate Financial Responsibility Program shall be paid

4 commencing 60 days following his release from confinement in

5 monthly payments of not less than $25 or 10 percent of his

6 gross monthly income, whichever is greater.  All monetary

7 payments shall be satisfied not less than 60 days prior to the

8 expiration of his term of supervised release.

9          The Court recommends that he be placed in a facility

10 in Oregon and strongly recommends that he participate in the

11 Residential Drug Abuse Program.

12          Mr. Beckstead has not waived his right to appeal as a

13 condition of his plea agreement.  He has 14 days from the date

14 of the entry of judgment to file a notice of appeal in this

15 matter.

16          If you fail to file that notice of appeal within 14

17 days from the date this Court enters the judgment and sentence,

18 you will forever waive your right to appeal the sentence as

19 imposed by this Court.  Do you understand that, Mr. Beckstead?

20 I need to have you audibly answer.

21          **THE DEFENDANT:**  Yes, sir.  I apologize.

22          **THE COURT:**  Any objections to the sentence as

23 pronounced by the Court, Mr. Barrett?

24          **MR. BARRETT:**  Not as calculated, Your Honor.

25          **THE COURT:**  Ms. Sprecher?

1          **MS. SPRECHER:**  No, Your Honor.  May I take the time to

2 dismiss Count Three in 0165 right now, please?

3          **THE COURT:**  I would absent -- Mr. Barrett, do you have

4 any objection?

5          **MR. BARRETT:**  No objection, Your Honor.

6          **THE COURT:**  All right.  Those counts will be dismissed

7 as requested by the United States, and I would direct that the

8 sentence be imposed as stated, and I would remand custody of

9 Mr. Beckstead to the United States Marshal for the District of

10 Wyoming for placement with the Attorney General and service of

11 the sentence as imposed.

12          One -- one last thing, Mr. Beckstead.

13          And it was in your discussion of Mr. Beckstead's

14 demeanor.

15          You went out on a furlough for a dental appointment

16 and never came back.  One of the problems that I have with

17 accepting a low-end sentencing in the range is -- is that,

18 Mr. Beckstead, you've represented a lot of things to a lot of

19 people that you're going to do the right thing.  You can do

20 that here or you can continue the same path that you've been

21 on.  I leave it up to you, but that's one of the reasons why

22 this Court, frankly, finds that a higher end sentence is

23 necessary.

24          So I wish you the best of luck, and I hope you take

25 advantage of the RDAP program and anything else you can to find

1 a way to kick your "substance abuse" issues, kick your criminal

2 activities and be a father to your two daughters.  Good luck.

3          We'll stand in recess.

4          **THE CLERK:**  All rise.  Court is now in recess.

5      **(The proceedings conclude at 11:26 a.m.)**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    **<u>REPORTER CERTIFICATE</u>**

2          I, JAMIE L. HENDRICH, retired Official Federal Court

3  Reporter in the United States District Court for the District

4  of Wyoming, certify that the foregoing is a correct transcript

5  from the record of proceedings in the above-entitled matter.

6  ____10/24/17___        _____/S/_____
          **Date**              **JAMIE L. HENDRICH, CSR-CRR**
7                           **Retired Official Federal Court Reporter**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25