UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOSHUA MICHAEL BECKSTEAD, <br><br> Defendant. | Case Nos. 12-CR-165-SWS <br> 12-CR-262-SWS <br> 12-CR-263-SWS <br> 12-CR-280-SWS |

## ORDER DISMISSING MOTION TO MODIFY ORDER REVOKING DEFENDANT'S SUPERVISED RELEASE

This matter comes before the Court on Defendant Joshua Beckstead's handwritten letter received by the Court on September 27, 2022, which the Court construes as a motion to modify Order Revoking Defendant's Supervised Release (Doc. 79[1]). Having considered the motion and reviewed the record herein, the Court finds the motion must be dismissed for lack of jurisdiction.

### BACKGROUND

In late 2012, Mr. Beckstead pled guilty to bank robbery, attempted bank robbery, and credit union robbery. He was sentenced in early 2013 to 112 months' imprisonment to be followed by three years of supervised release. He commenced his term of supervised release in May 2020. He also adopted a dog in May 2020. (Doc. 79 p. 1.)

Mr. Beckstead has not been successful on supervised release. Less than a year after

---

[1] Unless otherwise indicated, all citations to the record are to Case No. 12-CR-165-SWS.

his release from prison, he was placed on home detention with radio frequency monitoring for repeated methamphetamine use. (Doc. 48.) Shortly thereafter, his supervised release was revoked for continued drug use and other violations of release conditions. (Docs. 49, 58, 63.) He was sentenced to 60 days' imprisonment followed by 24 months of supervised release on that revocation proceeding. (Doc. 63.)

He recommenced supervised release in June 2021. Within six months, he was again placed on home detention with radio frequency monitoring for continued methamphetamine use. (Doc. 64.) A little over a month later, he cut off his ankle monitor and absconded from supervision. (Doc. 65.) He was arrested several months later in Salt Lake City, Utah. (Doc. 66.) In August 2022, he was sentenced to another six months of imprisonment followed by 18 months' supervised release on his second revocation proceeding. (Doc. 78.)

Mr. Beckstead now asks the Court to amend its latest sentence to allow him to spend the last 45-60 days of his six-month imprisonment at the halfway house (residential reentry center) in Casper. (Doc. 79.) He asks for this because his former mother-in-law, who has been caring for his dog, will be moving in late January 2023 and cannot take his dog with her, so he wants to be out of prison to take care of his dog. (*Id.*) He asserts: "I'll do whatever it takes for my dog. I'll stay clean, I'll comply with probation. I hope you will consider letting me do my last 45-60 days at CRC in Casper." (*Id.*)

## DISCUSSION

The sentence for Mr. Beckstead's second revocation proceeding has long become final. *See United States v. Luna–Acosta*, 715 F.3d 860, 865 (10th Cir. 2013) (a sentence

becomes final upon a "formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished"). Consequently, the sentence can only be modified where a statute authorizes such modification. *United States v. Graham*, 704 F.3d 1275, 1277 (10th Cir. 2013); *see also* 18 U.S.C. § 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except [under circumstances not at issue in this case]"). Mr. Beckstead has not identified any statutory authority that would give the Court jurisdiction (authority) to modify his revocation sentence. Additionally, the Court's own research has uncovered no statutory authority that would give the Court jurisdiction to substantively modify Mr. Beckstead's latest term of imprisonment in the manner he requests. *See United States v. Hendrix*, 630 F. App'x 816, 817-21 (10th Cir. 2015) (reversing for lack of jurisdiction the district court's imposition of an additional year of supervised release a few hours after the revocation sentencing had concluded).[2]

Moreover, even if it could modify Mr. Beckstead's revocation sentence in the manner he requests, the Court would not do so. He asserts he will stay clean and comply with the conditions of supervised release for his dog's sake, yet he has had his dog since May 2020 and has utterly failed to conform his conduct to the law during that time period. (*See* Doc. 74 p. 4 ("Over the past two years, Mr. Beckstead has made zero effort to improve his situation. Interventions such as increased supervision, cognitive behavioral therapy, home detention, treatment efforts, and revocation of supervised release with a short punitive sanction have had no effect on him.").) And his behavior at a halfway house last

---

[2] An unpublished decision is not binding precedent, but it may be relied on for its persuasive value with respect to a material issue. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

year does not make the Court in any hurry to send him back. (*See id.* (noting that at a halfway house in Gillette, Wyoming, Mr. Beckstead "did nothing but make the staff's already difficult job even more difficult" as he "refused to cooperate during the drug treatment assessment, failed to complete chores as required by the program, and refused to attend the recommended treatment").) Mr. Beckstead's conduct since completing his initial imprisonment in this case offers little basis for the Court to now accept his promises of compliance.

The Court understands and appreciates the bond forged between a human and their dog. The Court also empathizes with the very difficult situation Mr. Beckstead's misconduct has placed his dog in. Mr. Beckstead is encouraged to start arranging for another kind soul to care for his dog upon his former mother-in-law's move in January. And the Court certainly hopes Mr. Beckstead's obvious love for his dog will indeed encourage him to improve his behavior going forward.

## ORDER

**IT IS THEREFORE ORDERED** that Mr. Beckstead's handwritten Motion to Modify Order Revoking Defendant's Supervised Release (12CR165 Doc. 79; 12CR262 Doc. 53; 12CR263 Doc. 53; 12CR280 Doc. 52) is hereby **DISMISSED FOR LACK OF JURISDICTION**.

**DATED:** October ___3___, 2022.

Scott W. Skavdahl
United States District Judge